UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SANDRA MONTALVO, | ) | 1:04cv5725 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**BACKGROUND**

Plaintiff Sandra Montalvo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On October 24, 2004, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for disability insurance benefits on August 22, 2001. AR 82-84. She alleged that she had been disabled since July 15, 2000, due to fibromyalgia, pain, headaches and fatigue. AR 82, 95. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 64-64, 69-73, 74. On November 7, 2001, ALJ Robert Ryan held a hearing. AR 32-61. On January 31, 2003, ALJ Ryan denied Plaintiff's claim. AR 11-29. The Appeals Council denied review on March 12, 2004. AR 5-8.

Hearing Testimony

On November 7, 2002, in Stockton, California, ALJ Ryan held a hearing. AR 32. Plaintiff appeared along with her attorney, Jeffrey Milam. AR 32. Vocational Expert ("VE") Stephen Schmidt also appeared and testified. AR 32.

Plaintiff testified that she was born on September 26, 1959, and has a high school education. AR 35-36. She hasn't worked since 2000 because it was too painful, she was unable to stand for long periods, and had pain in her legs and lower back. AR 36. She explained that doctors told her she had fibromyalgia and that her back "had gone out, too." AR 38. Her back pain goes down both legs. AR 38. She also has pain in both arms and hands. AR 38. She testified that she is "just tired of this pain, and it hurts, and just very depressed and just..." AR 39.

She lives in a house with her husband and three children. AR 39. She normally wakes up at 6:30. AR 39. She is able to dress and bathe herself, tries to do the household chores, and sometimes cooks. AR 39. Her husband shops for food and does most of the cooking. AR 39. Plaintiff, or her daughter, does the laundry, washes dishes and cleans the house. AR 39-40.

She thought she could walk for about two or three blocks, stand for half an hour and sit for an hour. AR 40. On an average day, she has to stand at the sink to do the dishes and then has to go sit down because of the pain. AR 40. When the pain is bad, she lies down. AR 40. She

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

sometimes lies down all day. AR 41. She thought she could lift about nine pounds, and cannot climb, bend at the waist, crouch, crawl or kneel. AR 41. She can reach with her arms out front. AR 41. It hurts to make a fist. AR 42. She can grasp things and feel her fingers. AR 43. She testified that her vision is blurry sometimes, especially if she is reading, but that a doctor told her she didn't need glasses. AR 43. She gets short of breath when she's in pain "from her body" and she gets nervous. AR 44. She explained that she has this pain in her body that won't go away. AR 44.

Plaintiff testified that she has pain in her back, her lower back and head, and that she gets migraines. AR 45. The migraines cause the back of her neck to hurt. AR 45. She also has pain in both shoulders. AR 45. Her pain in her lower back goes down through her hips, into her legs and into her feet. AR 46. To relieve her pain, she uses Bengay, takes medication and lies down. AR 46. Her lower back pain is the most severe, and she described it as sharp pain that rates as a nine out of ten. AR 46. It is always there. AR 46. She said that sometimes it is a ten, "but it just burns and hurts. I have pains go, always constant pain." AR 47.

She has no hobbies and does not watch television or read. AR 47. When she lies down, she just closes her eyes and tries to sleep. AR 47. She does not exercise, drink or drive a car. AR 47. She meets with her family and goes to the mall. AR 47. She has problems with sleep because her back and legs tremble. AR 47. When asked if she takes care of her sick son, she replied, "Just, no, well, yes." AR 48.

She testified that she has not seen a psychiatrist or psychologist. AR 49. Her medications do not cause any side effects. AR 50.

When questioned by her attorney, Plaintiff explained that she can use her hands to write for two to three minutes, and then needs to take an hour break. AR 50. She can wash dishes for three minutes before needing to rest for an hour. AR 50. Her leg-shaking is caused by restless leg syndrome and it happens more at night than during the day. AR 50-51. Her doctor has not talked about surgery for her back problem. AR 51. She currently weighs 212 pounds, and has been gaining weight over the last year. AR 51. Her doctor has not told her to exercise, and she stretches by "rubbing" her joints. AR 51. She also uses a heating pad for the pain. AR 52. She

feels that her depression prevents her from doing everything. AR 52. When questioned by the ALJ, Plaintiff explained that she did not mean "everything," just that her depression prevented her from "working at [her] work." AR 53. Specifically, the depression causes her limitations in concentrating and conversing. AR 53. She felt like she had trouble with the questions at the hearing. AR 53.

VE Stephen Schmidt testified that a person of Plaintiff's age, education and past relevant work, who could lift 20 pounds occasionally and 10 pounds frequently, who could stand for two hours out of an eight hour workday, walk for two hours, and sit for six hours, and who had to avoid ropes, scaffolds and climbing, and was intolerant to work stress, could perform sedentary, unskilled work. AR 57. Specifically, this person could perform the positions of assembly worker and cashier. AR 57.

Medical Record

In September 1997, Plaintiff's treating physician diagnosed Plaintiff with fibromyalgia and referred her to Kanwal Khanna, M.D., for rheumatological evaluation and treatment. AR 266-267.

Plaintiff first saw Dr. Khanna on November 6, 1997. AR 224. He described her as slightly overweight. AR 225. After a physical examination, he noted a history of positive anti-nuclear antibody and musculoskeletal symptoms. AR 225. He determined that Plaintiff may have osteoarthritis in her knees and may have an element of myofascial pain or polymyalgia. AR 225. A chest x-ray ruled out lung disease. AR 227.

A December 10, 1997, x-ray of Plaintiff's sacroiliac joints revealed asymmetric osteoarthritis in the left sacroiliac joint and disc degeneration as L5-S1. AR 223.

Plaintiff returned to Dr. Khanna on December 10, 1997. AR 222. She indicated that she was out of medication and was having trouble affording them. AR 222. She continued to have pain and was sleeping irregularly. AR 222. He diagnosed possible fibromyalgia vs. spondylitis. AR 222.

Plaintiff underwent physical therapy from April 17, 1998, to May 19, 1998. AR 145-148. When she began, she complained of constant pain in her anterior and posterior cervical

areas, which she graded as a 6 on a scale of 1 to 10. AR 150. On May 19, 1998, Plaintiff indicated that she didn't notice much overall improvement. AR 148. She was instructed to contact her therapist if she decided to use a home TENS unit and to continue her home exercise program. AR 148.

Blood tests done in March 1999 revealed increased inflammatory markers. AR 253-254.

Plaintiff returned to Dr. Khanna on June 1, 1999. AR 217. She continued having chronic pain primarily in the neck and calf muscles. AR 217. Dr. Khanna "wondered" if she had restless leg syndrome and prescribed medication. AR 217. He suggested she wear arch supports because she was on her feet all day while working as a supermarket checker. AR 217.

On August 13, 1999, Plaintiff underwent x-rays of her right foot. AR 187. The x-rays revealed no fracture or dislocation, but showed osteoarthritis at the first metatarsophalangeal joint. AR 187.

On June 2000, Plaintiff saw Jeffrey C.G. Mark, M.D., for evaluation of epigastric abdominal pain and dyspepsia. AR 161. He described Plaintiff as overweight and in no acute distress. AR 162. He recommended testing to determine the cause of her problems and prescribed medication. AR 163.

On June 30, 2000, Plaintiff underwent an esophagogastroduodenoscopy with biopsy. AR 181. The test revealed intense gastritis, evidence of gastroesophageal reflux disease and gastric polyps. AR 181.

On July, 17, 2000, Plaintiff returned to Dr. Winkler and stated that she couldn't stand because of pain in her left knee. AR 248. Plaintiff was not using her medication regularly. AR 248.

On September 25, 2000, Dr. Mark noted that her symptoms were less frequent. AR 155. She was not taking her Prevacid as directed and did not take other prescribed medications. AR 155.

Plaintiff saw Dr. Khanna on September 28, 2000. AR 215. He diagnosed myofascial pain and possible restless leg syndrome. AR 215.

October 2, 2000, x-rays of Plaintiff's knees were negative. AR 214.

1  Blood tests done in September 2000 showed high inflammatory titlers. AR 243.

2  On November 30, 2000, Plaintiff returned to Dr. Khanna and indicated that she was not
3  much better. AR 211. She had numerous tender points, and mild discomfort in her calves and
4  shoulders. AR 211. He diagnosed myofascial pain/limited fibromyalgia, possible restless leg
5  syndrome, back and neck pain and osteoarthritis. AR 211. He advised her to remain off work
6  until February 11, 2001. AR 211.

7  On February 7, 2001, Plaintiff saw Brian T. McCaffrey, M.D., for evaluation of left side
8  back pain, frequent urination and urine leakage. AR 173. Plaintiff underwent testing and was
9  placed on medication to improve her symptoms. AR 174. In April 2001, she continued to
10  complain of back pain, especially on her left side, but indicated that the medications were
11  helping. AR 171.

12  Plaintiff returned to Dr. Khanna on March 27, 2001, still complaining of pain and fatigue.
13  AR 206. He diagnosed myofascial pain/fibromyalgia, chronic fatigue, possible restless leg
14  syndrome, and neck and back pain. AR 206. He adjusted her medications and instructed her to
15  be off work until June 1. AR 206.

16  On July 24, 2001, Plaintiff received two paracervical injections. AR 204. Dr. Khanna
17  noted that Plaintiff had not yet tried the shoe inserts. AR 204. He reminded her about regular
18  stretching and range of motion exercises. AR 204.

19  On July 12, 2001, Plaintiff received emergency room treatment for a recurrent headache
20  with nausea. AR 177. She was diagnosed with an acute tension headache and fibromyalgia by
21  history. AR 180. She was discharged in improved condition. AR 180.

22  Plaintiff underwent x-rays of the lumbosacral spine on August 29, 2001. AR 236. The x-
23  rays revealed scattered degenerative changes with degenerative disc disease at L4-S1. AR 236.
24  There was no acute abnormality.

25  On September 12, 2001, Dr. Khanna wrote a letter to Social Security stating that Plaintiff
26  suffers from fibromyalgia and chronic fatigue, and despite treatment, remains quite symptomatic.
27  AR 201. He believed that Plaintiff was "totally disabled for the performance of even sedentary
28  work." AR 201.

On October 21, 2001, Plaintiff was evaluated by consultive internist David Thomas Jones, M.D. AR 188. She complained of pain throughout her whole body and indicated that she was diagnosed with myofascial pain syndrome and/or fibromyalgia. AR 188. Despite medications, she has had no relief. AR 188. Upon examination, he described her as appearing sad and her affect somewhat flattened. AR 188. Her joints showed no sign of inflammation, her strength was 5/5, and she had full range of motion in all joints, including her lumbar and cervical spine. AR 189. He reviewed an x-ray of her lumbosacral spine, which showed scattered degenerative changes, with degenerative disc disease at L4-S1. AR 189. Dr. Jones concluded that Plaintiff had diffuse pain syndrome, with a diagnosis of myofascial pain or fibromyalgia, and probable depression or dysthymia. AR 189. Based on his examination, the opined that "there are no restrictions for activities requiring sitting, standing, walking, lifting, or carrying, other than what may be appropriate for a somewhat depressed woman." AR 189.

On November 15, 2001, State Agency physician Sandra K. Clancey, M.D. completed a Physical Residual Functional Capacity Assessment form. AR 190. She opined that Plaintiff could occasionally lift/carry 20 pounds, 10 pounds frequently, could stand and/or walk for at least two hours in an eight hour workday, sit about six hours in an eight hour workday, and was unlimited in pushing/pulling. AR 191. She could never climb ropes or scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl. AR 192. Her opinion was based on her assessment and review of treating records as of September 2001 and the consultive examination report of October 2001. AR 196-197.

On September 25, 2001, Plaintiff returned to Dr. Khanna complaining primarily of right medial knee pain. AR 200. She received two injections in her right knee. AR 200. She was instructed to continue with range of motion and stretching exercises. AR 200.

On December 26, 2001, Dr. Khanna gave Plaintiff two injections in her left shoulder. AR 199.

On February 21, 2002, State Agency physician Marshall Gollub, M.D. completed a Physical Residual Functional Capacity Assessment form. AR 276. He opined that Plaintiff could occasionally lift/carry 20 pounds, 10 pounds frequently, could stand and/or walk for about

7

six hours in an eight hour workday, sit about six hours in an eight hour workday, and was unlimited in pushing/pulling. AR 270. She could never climb ropes or scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl. AR 271.

On February 25, 2002, Plaintiff saw Dr. Khanna and reported that she was despondent over her son's illness. AR 334. She was given medication for her anxiety. AR 334.

On March 22, 2002, Plaintiff saw Charles House, Ph.D. for a comprehensive psychiatric evaluation. AR 277. Plaintiff explained that her constant pain makes her depressed, and that she is unable to work and is forgetful. AR 277. She indicated that she showers, fixes breakfast, cleans the house, takes care of her children, does the dishes and the laundry, and takes a nap if she's in pain. AR 279. She indicated that she goes to church and talks on the phone. AR 279. Upon examination, her mood was depressed. AR 279. Her cognitive functioning was intact and without evidence of an impairment in attention, concentration or memory. AR 280. She was able to maintain good concentration, persistence and pace. AR 281. He diagnosed depressive disorder, not otherwise specified. AR 282. Her prognosis was "guarded" and she was encouraged to seek psychiatric intervention. AR 282. He opined that Plaintiff would not likely improve within the next 12 months. AR 282. He further opined that Plaintiff would not have difficulty performing simple, repetitive tasks, or more detailed and complex tasks. AR 282. She would be able to accept supervision and would be able to interact with coworkers and the public. AR 282. Plaintiff would not have difficulty maintaining regular attendance in a work setting. AR 283. Dr. House noted that this opinion only considered Plaintiff's psychiatric variables and not her alleged physical problems. AR 283.

A March 29, 2002, MRI of the lumbar spine revealed disc degeneration at L4-5 and L5-S1, with mild central disc protrusion. AR 335.

On April 4, 2002, Plaintiff attended her initial evaluation at Payne-Murphy Rehabilitation. AR 329. She was referred to physical therapy for pain relief and strengthening of her lower back, which was recently exacerbated when her son was hospitalized. AR 329. She indicated that she was in constant pain, which she graded as a 7.5 out of 10, and was unable to perform her regular homemaking tasks of cleaning and laundry. AR 329. After her last visit on

April 25, 2002, Plaintiff reported improvement in pain, range of motion, strength and functioning. AR 328. She indicated that she had resumed her household duties but has increased pain. AR 328. She also complained of a decreased energy level. AR 328. Plaintiff was instructed to follow her home exercise program. AR 328.

On May 14, 2002, Dr. Winkler opined that Plaintiff was unable to pursue gainful long term employment. AR 327.

On August 12, 2002, Dr. Winkler completed a Questionnaire in which he opined that Plaintiff could sit for four hours in an eight hour workday, and stand/walk for 20 minutes consecutively, one to two hours total in an eight hour workday. AR 321. He believed that she would need to lie down or elevate her legs for three to four hours in an eight hour workday. AR 321. He opined that Plaintiff was precluded from performing full time work at any exertional level due to her severe fibromyalgia. AR 321. In support of his opinion, he noted that Plaintiff meets the CDC criteria for duration and multiple trigger points, has severe fatigue, has obvious difficulty sitting and standing, and has had positive anti-nuclear antibody titlers. AR 321. He also noted that she was very intolerant of work stress, which would worsen her gastritis, esophageal reflux, migraines and anxiety. AR 321.

Dr. Winkler also completed a form setting forth that Plaintiff has met the criteria of the American College of Rheumatology for the classification of fibromyalgia for the past several years. AR 323.

On October 18, 2002, Dr. Khanna completed a Questionnaire in which he opined that Plaintiff was precluded from performing full time work at any exertional level because of her fibromyalgia and possible inflammatory arthritis. AR 336. She could sit for less than one hour out of an eight hour workday and could stand for less than one hour in an eight hour workday. AR 336. He based his findings on diffuse joint and muscle pain. AR 336. He believed that Plaintiff had been disabled since March 7, 2001. AR 337.

Dr. Khanna also completed a form setting forth that Plaintiff has met the criteria of the American College of Rheumatology for the classification of fibromyalgia. AR 338.

<u>ALJ's Finding</u>

The ALJ determined that Plaintiff had the severe impairments of fibromyalgia, chronic fatigue syndrome, degenerative disc disease of the lumbar spine, osteoarthritis of the knees, left sacroiliac joint and first metatarsophalangeal joint of the right foot, and obesity. AR 27. The ALJ further found that Plaintiff's allegations, and those of her cousins, regarding her limitations were not totally credible. AR 28. He determined that Plaintiff retained the residual functional capacity ("RFC") RFC to perform sedentary to light work. AR 28.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

10

1  such severity that he is not only unable to do her previous work, but cannot, considering his age,
2  education, and work experience, engage in any other kind of substantial gainful work which
3  exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).
4  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th
5  Cir. 1990).

6      In an effort to achieve uniformity of decisions, the Commissioner has promulgated
7  regulations which contain, inter alia, a five-step sequential disability evaluation process. 20
8  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ
9  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of
10 disability; (2) has an impairment or a combination of impairments that is considered "severe"
11 (fibromyalgia, chronic fatigue syndrome, degenerative disc disease of the lumbar spine,
12 osteoarthritis of the knees, left sacroiliac joint and first metatarsophalangeal joint of the right
13 foot, and obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does
14 not have an impairment or combination of impairments which meets or equals one of the
15 impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) is unable to perform any
16 of her past relevant work; (5) but retains the RFC to perform work existing in significant
17 numbers in the national economy. AR 27-28.

18     Plaintiff argues that the ALJ (1) erred in failing to properly consider the opinions of
19 treating physicians Dr. Khanna and Dr. Winkler; and (2) failed to properly review the testimony.

20 **DISCUSSION**

21 A.    <u>Treating Physicians' Opinions</u>

22     Plaintiff first argues that the ALJ failed to properly consider the opinions of treating
23 physicians Dr. Khanna and Dr. Winkler. Specifically, she contends that he failed to give
24 sufficient reasons to reject their "complete and supported" opinions that Plaintiff has significant
25 and disabling limitations that preclude full-time work.

---

[3] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ set forth the limitations suggested by Dr. Khanna and Dr. Winkler, but correctly noted that statements by a physician as to an individual's disability or employability are not determinitive of the ultimate issue before the ALJ, and that the weight to be given such statements depends upon the extent to which they are supported by specific clinical findings and are consistent with the other medical evidence. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ then determined that the statements appeared to be conclusory, were based upon Plaintiff's subjective complaints, and were prepared in response to her request for assistance with her disability claim. AR 23. Indeed, each opinion was set forth on a form questionnaire and appeared to be based on Plaintiff's subjective complaints. Dr. Winker listed multiple bilateral trigger point tenderness, apparent weakness, difficulty sitting and standing, and a positive anti-nuclear antibody titler as objective findings in support of his opinion. AR 321. With the exception of the positive anti-nuclear antibody titler, each supporting basis is subjective. Similarly, Dr. Khanna lists only "diffuse joint and muscle pain" as objective findings in support of his opinion. These are subjective complaints. The ALJ explains that the doctors "fail to cite any additional findings that are consistent with the degree of limitation they and the claimant allege." AR 23. A brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Additionally, as Respondent notes, fibromyalgia can be medically diagnosed my multiple tender points, but its symptoms are entirely subjective. This renders Plaintiff's credibility

material to the credibility of the doctors' findings. As explained in more detail below, the ALJ ultimately rejected Plaintiff's subjective complaints and was therefore entitled to reject the doctors' opinions based on these discredited complaints. *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989).

The ALJ also found that the two opinions were contradictory. AR 23. While Dr. Khanna indicated that Plaintiff could not sit, stand or walk for two hours total, Dr. Winkler opined that she could sit for four hours and stand or walk for one to two hours. AR 23-24. He found Dr. Winkler's assessment to be more consistent with Plaintiff's statements regarding her daily activities. AR 24. Plaintiff argues that the opinions are consistent because they both establish that Plaintiff cannot work an eight hour day. However, on a more specific level, the ALJ correctly found that the opinions were contradictory in setting forth Plaintiff's limitations.

Additionally, the ALJ cited Plaintiff's documented non-compliance as a reason for rejecting the opinions. AR 24. The ALJ noted that treating records reveal that she experiences relief with medication, but is sometimes non-complaint. AR 24. In support of his finding, the ALJ cited medical records from July 17, 2000, when Dr. Winkler noted that Plaintiff was not taking her pain medication regularly, and from September 14, 2000, when Dr. Winkler noted that Plaintiff failed to return for a follow-up visit with Dr. Khanna despite the recommendation to do so. AR 24.

Finally, the ALJ found that Plaintiff's own testimony about her daily activities "indicates that her ability to sit, stand, walk, and lift are in excess of those limitations imposed by both doctors." AR 24. Plaintiff testified that she wakes up at 6:30 a.m., bathes and dresses herself, sees her children off to school, and tries to do household chores such as cooking and laundry. AR 39-40. She is also able to meet with her family and go to the mall. AR 47. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (treating physician opinion of disability properly rejected based on claimant's inconsistent level of household and child-rearing activities).

Based on the above, the ALJ gave specific and legitimate reasons for rejecting Dr. Khanna and Dr. Winkler's opinions on Plaintiff's level of disability.

To the extent that Plaintiff argues the ALJ failed to consider the combined effects of Plaintiff's impairments, and that this would support the treating physicians' opinions, her argument fails. In a brief argument, Plaintiff contends that the ALJ failed to consider the effects of Plaintiff's gastrointestinal impairments, bilateral pes planus of the feet, restless leg syndrome and headaches on her fibromyalgia. Plaintiff correctly states that at step two, the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

However, a review of the ALJ's decision demonstrates that the ALJ did in fact consider each of these impairments. AR 20, 21, 24. He described Plaintiff's gastrointestinal impairments and found that although the problem may be controlled with medication and Plaintiff was not compliant with her regimen, she has "intermittent GERD episodes, which are exacerbated by perceived stress." AR 24. As for her headaches, the ALJ recognized that Plaintiff had been diagnosed with and treated for migraine headaches, but that they are not of such severity and frequency that they would prevent her from performing sustained work. AR 24. Similarly, the ALJ found that even if Plaintiff suffered from restless leg syndrome, it imposed no more than minimal limitations on her ability to perform work. AR 24. The ALJ found that, "considering all Ms. Montalvo's impairments, the undersigned finds that she retains the residual functional capacity to perform sedentary to light exertional work activity." AR 25. This conclusion is supported by substantial evidence, especially where none of the these alleged impairments, alone or in combination, appears to have any effect on Plaintiff's ability to work. 20 C.F.R. § 416.912(c) (the burden remains with the claimant to "provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled . . .")

Finally, Plaintiff claims that the ALJ failed to consider her obesity at steps three and five of the sequential evaluation process, as required by SSR 02-1p. She contends that her obesity, in combination with her other impairments, supported the treating physicians' opinions.

Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation process, including when determining an individual's RFC. "The combined effects of obesity

with other impairments may be greater than might be expected without obesity." SSR 02-1p. The Ninth Circuit recently held that, pursuant to SSR 02-1p, the ALJ must consider obesity in determining RFC based on the information in the case record. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Here, the ALJ first explained that no treating source had made a diagnosis of obesity, or assessed that her weight causes or contributes significantly to the pain and dysfunction she alleges. AR 16. Despite this, the ALJ nonetheless determined that Plaintiff's obesity was a severe impairment because it "may contribute to her musculoskeletal symptoms". AR 17. In determining whether any of Plaintiff's impairments met or equaled a listing, the ALJ recognized his duty, pursuant to SSR 02-1p, to consider her obesity "in causing or contributing to any impairment of the musculoskeletal body systems as described under listings 1.00Q." AR 18. The ALJ concluded that none of Plaintiff's impairments met or equaled the listings. AR 18. The ALJ further concluded that despite Plaintiff's impairments, she retained the RFC to perform sedentary to light exertional work. AR 25.

Plaintiff's argument that the ALJ failed to consider the effects of her obesity is simply untrue. The ALJ considered the evidence in the record, including the evidence of her weight, and determined that Plaintiff could perform sedentary to light work. AR 25. Additionally, as the ALJ noted, although the record contains evidence of Plaintiff's weight, there was no specific diagnosis of obesity and no evidence that Plaintiff's obesity limits her functioning. *See Burch*, 400 F.3d at 683. Given the lack of evidence in the record, it appears that the ALJ gave Plaintiff the benefit of the doubt in finding her obesity to be a severe impairment and considering its effect on her musculoskeletal system.

B.  Plaintiff's Testimony

Next, Plaintiff argues that the ALJ did not fairly consider Plaintiff's testimony. Specifically, she contends that her testimony was either ignored or misstated.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS,* 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what

15

evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)(quoting *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (*citing Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Here, the ALJ determined that the record as a whole did not support a finding that Plaintiff suffers from severe pain that would render her unable to engage in sustained work activity. AR 22. He described Plaintiff's testimony that her activities are severely limited and that she spends most of her days in a "nearly vegetative state." AR 22. The ALJ then properly examined Plaintiff's daily activities as reported in the earlier part of her testimony and as reported in previous statements to the Social Security Administration. Plaintiff testified that she gets up around 6:30 in the morning, bathes, dresses and sees her children off to school. AR 23. She visits with friends and family members. AR 23. Plaintiff testified that she is able to do the dishes, laundry, cooking, and housekeeping with some help from her daughter and husband. AR 23. The ALJ concludes, "while her daily activities have no doubt been affected by her impairments, her level of activity does not support the degree of pain or discomfort she alleges." AR 23. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (testimony properly discredited due to claimant's daily activities).

The ALJ also noted that the level of medication Plaintiff takes and her level of daily activities suggest that her pain is sufficiently controlled to enable her to perform work activity.

He noted that there was no evidence of disuse muscle atrophy or wasting commonly associated with severe pain, and that Plaintiff had not participated in therapeutic treatment normally associated with severe pain syndrome. AR 23. *Meanel v.Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant received "minimal" and "conservative" treatment). Additionally, the ALJ described Plaintiff's occasional non-compliance, and noted her testimony that she did not exercise despite Dr. Khanna's express recommendation that she do regular stretching and range of motion exercises. AR 22, 24. *Bunnell*, 947 F.2d at 346 (holding that "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is relevant to credibility finding).

The ALJ further discredited Plaintiff's complaints of blurry vision based on Dr. Jones' consultive examination that showed 20/20 vision in each eye. AR 22. The ALJ discredited Plaintiff's allegation of mental deficiencies based on the mental status examination that showed no evidence of attention, concentration, or cognitive defects. AR 23. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (claimant properly discredited because hearing testimony was inconsistent with medical evidence).

Plaintiff further contends that the written statements of her two cousins support her testimony. Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). If the ALJ discounts this evidence, he must give reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1995). Here, the ALJ determined that the "perceptions" of Plaintiff's cousins were not entirely credible because they were not consistent with the weight of the medical evidence, including the observations of Plaintiff's treating and examining sources. AR 23. Specifically, he explained that Angie Aldama's perception that Plaintiff was forgetful was not supported by the medical record, which demonstrates that Plaintiff has no memory problems or concentration deficits. AR 23. He further explained that Maria Aldama's implication that Plaintiff is less careful about her personal hygiene than she used to be is contradictory to the record, which establishes that Plaintiff was consistently adequately groomed, if not well groomed, upon consultation and office visits. AR

23. The ALJ therefore gave reasons germane to each witness and properly rejected their testimony.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Sandra Montalvo.

IT IS SO ORDERED.

**Dated:   May 23, 2005**                    **/s/ Dennis L. Beck**
3b142a                                        UNITED STATES MAGISTRATE JUDGE